**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES DEWEES,** | : | |
| | : | |
| **Plaintiff** | : | **Civil Action No. 1:CV-05-212** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **JEFFREY T. HASTE,** | : | |
| **MARK TEMPLETON,** | : | |
| **DOMINICK DEROSE, and** | : | |
| **DAUPHIN COUNTY,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Pending before the Court is Defendants' collective motion for summary judgment on all of Plaintiff's claims. The motion is fully briefed and ripe for disposition. For the reasons set forth below, the motion will be granted and judgment entered in favor of Defendants.

**I.   FACTUAL BACKGROUND**

The factual allegations and the basis for this action are largely undisputed. During 2004, Dauphin County, Pennsylvania, was experiencing financial difficulty and its commissioners took action to address the situation by eliminating a number of employment positions. One such position eliminated during this process was the Deputy Warden for Support at the Dauphin County Prison. Plaintiff James DeWees held this position for approximately fifteen years, between January 1990 through January 15, 2005, when the Dauphin County Prison Board voted to eliminate this and several other positions at the prison.[1]

Plaintiff contends that Defendants, individually and collectively, caused his job to be

---

[1]   In addition to eliminating employment positions at Dauphin County Prison, the Commissioners also eliminated a number of other employment positions throughout the County.

eliminated and otherwise retaliated against him during and after his employment because of his exercise of speech and petitioning activity protected by the First Amendment of the United States Constitution. More specifically, Plaintiff claims that the county's given reasons for eliminating the Deputy Warden for Support position are pretextual and that the elimination in fact was retaliation for certain statements that Plaintiff made regarding prison operations, as well as for Plaintiff's prior litigation against Warden Dominick DeRose and the county. Additionally, Plaintiff has alleged that prison and county officials violated his right to substantive due process, and to equal protection under the law guaranteed by the Fourteenth Amendment. Plaintiff has also alleged that the named defendants conspired among themselves to violate Plaintiff's constitutional rights. Lastly, Plaintiff contends that his termination constitutes wrongful discharge actionable under Pennsylvania law. Defendants have moved for summary judgment on all of Plaintiff's claims and Plaintiff has opposed the motion.

## II.    STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). A factual dispute is material if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 249. The evidence presented must be viewed in the light most favorable to the non-moving party. Id. The inquiry is whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the nonmoving party may not simply sit back and rest on the allegations in the complaint.  Instead, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  The evidence must be viewed in the light most favorable to the nonmovant.  See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the nonmoving party must provide, a court should grant summary judgment where the nonmovant's evidence is merely colorable, conclusory or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

III.    **DISCUSSION**

A.      **Merger of Official Capacity Claims**

Though it is not clear from the complaint that Plaintiff has sued the individual Defendants in both their individual and official capacities, Defendants have nevertheless argued that the Court should grant summary judgment as to any claims made against the individual Defendants in their official capacities on the basis that such claims are duplicative of those already asserted against Dauphin County.  In support of this argument, Defendants cite to Kentucky v. Graham, in which the Supreme Court held that official capacity suits are, in effect, suits against the governmental body employing such defendants.  473 U.S. 159, 165-66 (1985).  Asserting that a jury would likely be confused if the Court were to permit Plaintiff to maintain official capacity claims as well as identical claims against their municipal employer, Defendants assert that they are entitled to summary judgment with respect to Plaintiff's claims against them in their official capacities.  For his part, Plaintiff declined to respond to this aspect of Defendants' motion. Because the law is clear that official-capacity claims against individual government officials are redundant of those against the municipality itself, the Court will grant Defendants' motion for summary judgment with respect to Plaintiffs' official-capacity claims.

B.      **First Amendment Retaliation**

In his complaint, Plaintiff claims that Defendants unlawfully retaliated against him for engaging in activities that are protected under the First Amendment.  Specifically, Plaintiff asserts that his efforts to advise the Dauphin County District Attorney regarding certain allegedly unlawful practices that he had either observed or been made aware of at the prison was protected as speech on a matter of public concern.  Plaintiff contends that the county's decision to

eliminate his employment, and his treatment by county and prison officials following his employment, constitutes unlawful retaliation for his speech on these topics. Secondly, Plaintiff avers that his employment was unlawfully terminated as retaliation for his having brought one or more civil actions against the county and certain of its employees, including Warden DeRose. Defendants move for summary judgment on Plaintiff's retaliation claim with respect to either his speech or petitioning activities, although for somewhat different reasons, which will be discussed separately below.

**1.      Claims arising out of Plaintiff's reporting of alleged improprieties at Dauphin County Prison.**

Plaintiff claims that during the summer or early fall of 2003, he provided Dauphin County District Attorney Edward Marsico information regarding a food service contract between Dauphin County Prison and Aramark Food Services. Plaintiff believed that the information he provided revealed illegality on the part of either Aramark or the prison in the way in which the food service contract was being performed and whether the prison was being billed appropriately for the amount and quality of food received. According to Plaintiff, the District Attorney took some steps to put the information before a sitting grand jury, although no criminal charges were ever filed against any party. Plaintiff represents that he initially took the information to the District Attorney rather than to Warden DeRose because he was engaged in litigation against the Warden at the time, although he later informed the Warden about the information in a memorandum pursuant to the District Attorney's direction.

Subsequent to making the allegations regarding the food service at the prison, Plaintiff wrote a letter to Defendant Haste, one of the County Commissioners, regarding additional

allegations that funds had been misappropriated from certain female prisoners' accounts. In this letter, Plaintiff requested a meeting with Defendant Haste to discuss the matter and to "submit several instances of harassment on the part of Warden DeRose." (Doc. No. 27-9, Undated Letter from James M. DeWees to Commissioner Jeff Haste; Ex. B to Dep. of James M. DeWees.)[2] In the letter, which Plaintiff indicates he was sending at his attorney's direction, Plaintiff requested a meeting with Commissioner Haste and explained that he did not bring the allegations regarding misappropriation of inmate funds to Warden DeRose's attention because he did not believe the Warden would handle the matter "properly." (Id.)[3] Although Plaintiff has admittedly been unable to discover any direct evidence linking these speech activities to the County's decision to eliminate his position in December 2004, he maintains that his elimination and his feeling "shunned" by co-workers constituted retaliation for having raised these issues with county officials. Defendants have moved for summary judgment on several grounds, chief among them that the speech activity is not entitled to protection because it was made pursuant to Plaintiff's official job responsibilities.

---

[2] Though the letter itself is not dated, it appears from Plaintiff's deposition testimony that it was sent on or around April 2, 2004. (Dep. of James DeWees at 83-86.)

[3] Plaintiff had attempted to arrange a meeting with Commissioner Haste on April 2, 2004, but this request was refused. The reason given for this refusal was the fact that at that time Plaintiff had two lawsuits pending against Dauphin County. (Doc. No. 27-9, Memo from Garry L. Esworthy to Jim DeWees dated April 2, 2004; Ex. 10, Dep. of James M. DeWees.) Accordingly, Garry L. Esworthy, the Risk Manager for Dauphin County, advised Plaintiff that he would need to submit a memorandum to the commissioner with whom he wished to meet, and that he needed to obtain written permission from counsel to speak with any of the commissioners in light of the pending litigation. (Id.) Esworthy wrote that "[w]e are not attempting to stop you from meeting with any of the commissioners to express legitimate concerns, however with pending litigation, this needs to be done within proper channels." (Id.) Plaintiff testified during his deposition that his attorney did not give him written permission to speak personally with Commissioner Haste. (Doc. No. 27-7, Dep. of James M. DeWees, at 102.)

To state a prima facie claim for First Amendment retaliation, a plaintiff has the burden to show: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).

Once a plaintiff has stated a prima facie case, the burden shifts to the defendant to show "that the same adverse action would have taken place in the absence of the protected conduct." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). Additionally, the Third Circuit has indicated that even if a plaintiff meets his burden of showing that the protected activity was a "substantial factor" in taking the adverse action against her, if a defendant can show that "that some other factor unrelated to the protected activity was the but-for cause of the [adverse action]," the plaintiff cannot state a claim. Id. at 127 n.11. At summary judgment, however, the "defendant must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the [adverse action]." Id.

The Supreme Court has explained that a public employee's speech is protected only when it is made as a citizen, rather than as a public employee acting pursuant to the speaker's employment responsibilities. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006) ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Following Garcetti, a public employee's statement is protected when: (1) in making it, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and (3) the government did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the

statement he made.  <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241-42 (3d Cir. 2006) (citing

<u>Garcetti</u>, 547 U.S. 410, 126 S. Ct. at 1958).

Defendants note that section 1.3.7 of the Dauphin County Prison Handbook that governed

Plaintiff's employment obligated him to "report, without reservation, any corrupt or unethical

behavior which could affect an inmate or the integrity of the organization" and provided further

that "[a]ny violations of rules or law must be reported at once to the proper authority."  (Def.

Statement of Material Facts, ¶ 7.)  Notably, Plaintiff acknowledges that the information he

communicated to the District Attorney, Warden DeRose, and Commissioner Haste was provided

"in compliance with Section 1.3.7 . . . ."  (Plaintiff's Counter-Statement of Material Facts, ¶ 7.)

Because Plaintiff undertook these activities in his role as Deputy Warden of Dauphin County

Prison in accordance with his undisputed official responsibilities, his statements and writings

reporting these matters are not entitled to First Amendment protection.  Accordingly,

Defendants' motion for summary judgment on Plaintiff's retaliation claims that are based upon

his reporting information about food service contracts and misappropriation of inmate funds will

be granted.

### 2. Claim arising out of Plaintiff's lawsuit.

#### i. Prima Facie Case

Although Plaintiff's statements about alleged wrongdoing at Dauphin County Prison do

not qualify as protected speech, Plaintiff has also alleged that he was retaliated against for having

filed a federal lawsuit in this Court against certain of the Defendants.  Within this circuit, "any

lawsuit brought by an employee against a public employer qualifies as a protected 'petition'

under the First Amendment so long as it is not 'sham litigation.'"  <u>City of Scranton</u>, 411 F.3d at

126 (citing <u>San Filippo v. Bongiovanni</u>, 30 F.3d 424, 443 (3d Cir. 1994)). In this case, therefore, that when Plaintiff filed his initial complaint against Defendants, he was engaging in protected activity under the First Amendment. The first element of his prima facie retaliation claim is therefore satisfied.

As noted above, to make out a prima facie case, Plaintiff must also point to evidence that would support a finding that his lawsuit was a "substantial factor" in Defendants' retaliation against him. To demonstrate that the protected activity was a "substantial factor," a plaintiff can offer circumstantial evidence such as: (1) temporal proximity between the act and response, <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 (3d Cir. 2000); (2) selective enforcement of rules against plaintiff, <u>Marrero v. Camden City Bd. of Soc. Servs.</u>, 164 F. Supp. 2d 455, 470 (D.N.J. 2001); (3) defendant's behavior changed after the protected act, <u>McCullough v. City of Atlantic City</u>, 137 F. Supp. 2d 557, 569 (D.N.J. 2001); and (4) defendant's inconsistent reasons for taking adverse action against plaintiff, <u>Waddell v. Small Tube Prods., Inc.</u>, 799 F.2d 69, 73 (3d Cir. 1986). A plaintiff is not obligated to prove that the adverse action was particularly severe; rather, "[e]ven an act of retaliation as trivial as failing to hold a birthday party for a public employee, if intended to punish her for exercising her free speech rights, may be actionable if under the circumstances it would be sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights." <u>O'Connor v. City of Newark</u>, 440 F.3d 125, 128 (3d Cir. 2006).

Though Defendants assert Plaintiff has adduced no evidence to support his claim of retaliation predicated upon his petitioning activity, Plaintiff counters that: (1) he was "shunned" by Defendants and other prison employees after filing his lawsuit; (2) he was denied access to

Commissioner Haste as a result of his lawsuit; (3) he was treated differently than other employees when he requested to return to work after being on doctor-ordered sick leave; and (4) his employment position was the only position eliminated at Dauphin County Prison that was actually occupied by an employee at the time it was cut. After careful consideration, the Court concludes that although he has not produced overwhelming evidence to support his claim of retaliation for engaging in petitioning activity, Plaintiff has managed to come forward with sufficient evidence to make out a prima facie case of retaliation.[4] In particular, although Plaintiff commenced his lawsuit against Dauphin County in 2002, his jury trial in the case took place approximately one month prior to the elimination of the Deputy Warden position that he filled, a brief temporal period that could provide circumstantial evidence supporting Plaintiff's claims. Additionally, there is conflicting evidence as to whether Plaintiff was ostracized in the workplace following commencement of his lawsuit by certain of the Defendants, as well as whether the decision to withhold his final paycheck pending the return of work-issued items may have been retaliatory or was merely fair enforcement of a written policy of which Plaintiff was admittedly aware. Although it presents a very close issue due to the relative paucity of the evidence Plaintiff relies upon in the record, the Court finds that Plaintiff has managed to identify some evidence supporting his claim that his petitioning activity was a substantial factor in the retaliation Plaintiff contends he experienced at Dauphin County Prison and in the eventual loss of his employment.

---

[4] Although the Court is principally tasked with determining whether Plaintiff has, in fact, come forward with evidence to support his claims of retaliation, it bears mention that Defendants have also produced a significant quantity of evidence that undermines Plaintiff's claims. In adjudicating the instant dispositive motion, the Court has refrained from weighing the competing evidence identified by the parties.

Defendants next argue that even if Plaintiff has come forward with sufficient evidence that his petitioning activity was a substantial cause of the retaliation he claims to have experienced, summary judgment is still warranted because Defendants would nevertheless have taken the same employment action against Plaintiff in the absence of his petitioning activity. In this regard, Defendants are referring specifically to the decision to eliminate Plaintiff's employment position, which Defendants contend was based purely on the fact that the county was seeking to cut its employment-related expenses and that county officials had determined that Plaintiff's job was expendable because other employees had assumed his responsibilities and had been performing them as well or better than he had prior to going on medical leave.[5]

Although Defendants have pointed to what they contend is a legitimate, non-retaliatory basis for eliminating Plaintiff's employment position, the Court finds that the motion for summary judgment cannot be granted on this ground. This presents a close issue, but the Defendants' burden at summary judgment of proving that a non-retaliatory factor was the "but for" basis for Plaintiff's elimination is substantial. See Hill v. City of Scranton, 411 F.3d at 127 n.11 (at summary judgment "defendant must present evidence of such quality that no reasonable juror could conclude that the protected activity was the but-for cause of the [adverse action]."). With the exception of Defendant Haste, it is unclear whether the other Defendants were even aware that the elimination of Plaintiff's employment position was under consideration, as

---

[5] As noted above, Plaintiff went out on medical leave in May 2004 and never returned to work, despite having been cleared to do so by his doctor, because the question of his return had been referred to the Prison Board – a referral Plaintiff contends was unusual, although Defendants assert that the matter was referred on the advice of counsel due to Plaintiff's ongoing litigation. Plaintiff was notified in December 2004 that his employment position had been eliminated.

Defendant DeRose had budgeted for the position and expressed surprise and disappointment when he learned of the Salary Board's decision to cut it. Defendants' proffered legitimate reason for eliminating Plaintiff's employment position finds support in the record, but the Court cannot say that Defendants have satisfied their substantial burden of proving a non-retaliatory basis was the but-for cause of Plaintiff's loss of his job and that no reasonable juror could conclude otherwise. Accordingly, the Court finds that Defendants are not entitled to summary judgment on the ground that Plaintiff has failed to state a prima facie case of retaliation.

### ii.    Personal Involvement

Defendants next argue that even if Plaintiff has articulated a prima facie case of First Amendment retaliation based upon his petitioning activity and identified evidence in the record to support such claim, Defendants Templeton and DeRose are nevertheless entitled to summary judgment because they lacked personal involvement in the allegedly retaliatory conduct. Noting that in order to be held liable under 42 U.S.C. § 1983 a defendant must have had personal involvement in the complained-of conduct, Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003), Defendants contend that neither DeRose nor Templeton may properly be held liable for the elimination of Plaintiff's job because neither had any role in the decision to cut the position.

After conducting a thorough review of the record provided by the parties, the Court finds that Plaintiff has failed to adduce any evidence that Defendants DeRose or Templeton had personal involvement in the decision to eliminate the Deputy Warden position that Plaintiff held. Indeed, Plaintiff essentially concedes that he has discovered no evidence that either defendant had any role in the employment decision at issue, but that it remains his belief that these men played a role in an alleged conspiracy to violate his rights.

In an effort to make up for this lack of evidence, Plaintiff suggests that each Defendant was nevertheless personally involved in certain other conduct. In the case of Defendant DeRose, Plaintiff asserts that he "was usually the party who made decisions as to when employees of the prison could return to work, however when plaintiff requested to return to work the matter was issued to the Prison Board." (Doc. No. 32, at 15.) Even assuming this fact to be true it is irrelevant to the salient issue of whether Defendant DeRose had a role in the decision to eliminate Plaintiff's employment position.[6] It appears Plaintiff is, at this stage in the litigation, attempting to broaden his allegations as to what constituted the allegedly retaliatory conduct that is at issue in this case. However, Plaintiff has from the outset grounded his claim of retaliation on the termination of his employment; the complaint cannot reasonably be read to include a claim for retaliation based upon the referral of Plaintiff's potential return to the Prison Board and to the extent Plaintiff is attempting to expand upon his original allegations through argument in his brief it is impermissible.[7] Accordingly, the Court agrees with Defendants that Plaintiff has

---

[6] Moreover, the Court fails to perceive how such a referral could be considered retaliatory even if it were a deviation from the standard practice.

[7] Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage. . . . Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004); see also Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted); Speziale v. Bethlehem Area Sch. Dist., 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers"). In the complaint, Plaintiff contends at the outset that his termination constituted retaliation in violation of the First Amendment and wrongful discharge under Pennsylvania law. (Compl. ¶ 1.) Separately, Plaintiff claims that the withholding of his paycheck constituted a violation of his right to due process and equal protection under the Fourteenth Amendment (id.); Plaintiff did not specifically claim that this alleged conduct also constituted additional evidence of retaliation.

failed to come forward with evidence that Warden DeRose was personally involved in the decision to eliminate Plaintiff's employment position.

The Court reaches a similar conclusion with respect to Defendant Templeton. Plaintiff has admittedly been unable to discover any evidence to support his allegation that Defendant Templeton was personally involved in the decision to eliminate the Deputy Warden position, either directly or as part of a broader alleged conspiracy. In the absence of evidence on this central issue, Plaintiff argues instead that Defendant Templeton was personally involved by demanding that Plaintiff return certain prison-issued property that he was believed to have in his possession, and in the decision to withhold Plaintiff's final paycheck until the items in question were returned. It appears Plaintiff is now attempting to claim that these alleged actions should be construed as retaliatory, but Plaintiff did not allege that such conduct constituted retaliation; instead, he alleged that the withholding of his paycheck constituted a violation of his Fourteenth Amendment right to due process and equal protection. Plaintiff has admittedly failed to come forward with evidence that Defendant Templeton played any part in the decision to eliminate Plaintiff's employment position, and the Court finds that Defendant Templeton is accordingly entitled to summary judgment on Plaintiff's First Amendment claims.

### iii.     Legislative Immunity

Finally, Defendants argue that Defendant Haste is entitled to absolute legislative immunity from Plaintiff's claim that he facilitated the elimination of the Deputy Warden position in retaliation for Plaintiff's exercise of petitioning activity. Defendants rely chiefly on the Supreme Court's decision in Bogan v. Scott-Harris, 523 U.S. 44 (1998), in which the Court unanimously held that a local legislator was entitled to absolute legislative immunity from a

plaintiff's claims that the decision of a mayor and city council vice-president to eliminate her employment position, among a number of others, constituted retaliation for her exercise of her First Amendment rights. The Supreme Court held that the decision to eliminate the positions was manifestly legislative, and the individual defendants' subjective motivations in introducing and passing the ordinance were irrelevant to a determination of whether the act itself was legislative and, therefore, entitled to absolute immunity. Id. at 54-55. Defendants contend that Bogan applies with equal force to the claims against Commissioner Haste who, along with other members of the Salary Board, voted to eliminate a number of funded positions at the prison and elsewhere as part of an effort to reduce the county's budget – an initiative of which Plaintiff was admittedly aware.

Plaintiff ignores Defendants' argument that Bogan is controlling, and his short response to Defendants' argument is indirect and unpersuasive. Plaintiff acknowledges the origins of absolute legislative immunity in the Constitution, but notes that legislators who violate a plaintiff's civil rights "in the course of performing non-legislative tasks" are not entitled to immunity. (Doc. No. 32, at 21.) From this distinction, Plaintiff concludes that "[c]learly, defendant DeRose and defendant Templeton are not entitled to legislative immunity." (Id.) Whether or not this is true, it is irrelevant. Defendants have not claimed that either of these defendants is entitled to legislative immunity. Instead, they have argued only that Defendant Haste's act of recommending and voting to eliminate Plaintiff's employment position, among others, is a legislative act entitled to absolute immunity. With respect to Defendant Haste, Plaintiff asserts that an alleged "conspiracy to deprive [Plaintiff] of his position started prior to defendant Haste even suggesting it to the Prison Board[.]" (Id.)

Upon review of the record, the Court finds that Plaintiff has failed to come forward with evidence to support his claim that Defendants Haste, Templeton, and DeRose conspired with one another, or perhaps others, to cause the elimination of Plaintiff's employment position. Furthermore, Plaintiff has failed to persuade the Court that the Supreme Court's holding in Bogan is inapplicable, and there is no conflict in the record regarding the official steps that Defendant Haste took along with other members of the Salary Board with respect to the elimination of Plaintiff's employment position.[8]  Review of the record confirms that Defendant Haste's act of recommending and voting for the elimination of the Deputy Warden position falls squarely within the sphere of legislative work that the Supreme Court found absolutely protected in Bogan.  For the foregoing reasons, the Court finds that Defendant Haste is entitled to absolute legislative immunity for voting to eliminate Plaintiff's employment position as part of Dauphin County's efforts to trim its budget.

## C.  Due Process and Equal Protection

Defendants next argue that they are entitled to summary judgment on Plaintiff's claim that Defendants violated his right to equal protection and substantive due process by requiring that he return all employment-issued items and clothing in accordance with the written terms and conditions of his employment, and by withholding his last paycheck when he failed to return all of the items.  Defendants note that Plaintiff was notified in a letter dated December 16, 2004, that

---

[8]    To the extent Plaintiff is arguing that Defendants' action to refer to the Prison Board the question of Plaintiff's possible return to work following his extended leave constituted non-legislative retaliation, it appears undisputed that this step was taken upon the advice of counsel in light of Plaintiff's then-current lawsuit.  Plaintiff has not adduced evidence to support his suggestion that this step was retaliatory and the Court does not find that it provides sufficient evidence to suggest that Defendant Haste took steps to violate Plaintiff's rights prior to voting to eliminate Plaintiff's employment position.

pursuant to Rule 3.10 of the Dauphin County Prison Employee Handbook he was to return all prison and county-issued items associated with his employment and to provide his computer passwords and combinations for any safes for which he was responsible. (DeWees Dep., Ex. 22.) Defendants and Plaintiff exchanged further correspondence regarding the return of such items in January 2005. (DeWees Dep., Exs. 23-27.) Defendants maintain that Plaintiff still has not returned all items that were issued to him and have continued to withhold his final paycheck as a result.[9] Upon consideration, the Court concludes that Defendants are entitled to summary judgment on both of Plaintiff's Fourteenth Amendment claims.

In order to establish a claim under the Fourteenth Amendment for a substantive due process violation, a plaintiff must allege and prove that he was subjected to arbitrary and capricious governmental conduct that shocks the conscience. County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998). In this case, Plaintiff claims that his right to substantive due process and equal protection were violated because Defendants caused his final paycheck to be withheld pending the return of certain work-issued items, combinations for safes, and passwords. It is undisputed that Section 3.10 of the Dauphin County Prison Employee Handbook dated January 2003, requires that prison employees return all such items at the conclusion of their employment. It is also undisputed that after Plaintiff's employment position was eliminated, Defendant Templeton followed up with Plaintiff to enforce the policy and that Plaintiff's final

---

[9] The current status of Plaintiff's final check from the County remains somewhat unsettled. In a motion seeking leave to amend the complaint, Plaintiff avers that Defendants somehow caused his final check to escheat to the Commonwealth as unclaimed property. In opposing the motion to amend, Defendants represent that, upon information and belief, Plaintiff's final check was actually returned to him after he petitioned the Commonwealth for a return of the property.

paycheck was withheld when he did not return all work-issued items. For his part, it appears

Plaintiff maintains that he did return all outstanding items. Regardless, the Court finds that even

if the parties have a genuine dispute over this issue, the conduct alleged on the part of prison

officials in demanding the return of prison and county-issued items, and enforcement of the

policy through withholding Plaintiff's final check, would not approach the level of conscience-

shocking conduct necessary to support a claim for substantive due process. This claim fails as a

matter of law.

Plaintiff brings an equal protection claim under a "class-of-one" theory, but this claim is

no more tenable than Plaintiff's other Fourteenth Amendment claim.[10] In Engquist v. Or. Dep't

of Ag., 128 S. Ct. 2146 (2008), the Supreme Court held that the "class-of-one theory of equal

protection does not apply in the public employment context." Id. 128 S. Ct. at 2151. In this case,

Plaintiff's claims are predicated entirely on his employment (and the ultimate termination

thereof) with a municipal employer. The Court finds Engquist applies to bar Plaintiff's equal

protection claim. Furthermore, even were this not the case, the Court would nevertheless

conclude that Plaintiff had failed to present either sufficient allegations or facts to get past

summary judgment. The Third Circuit has cautioned that it "do[es] not view an equal protection

claim as a device to dilute the stringent requirements needed to show a substantive due process

violation. It may be very unlikely that a claim that fails the substantive due process test will

---

[10]     In some situations, a plaintiff may be able to state a cognizable equal protection claim under a class-of-one theory, where a plaintiff alleges and proves that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). As noted, however, the Supreme Court has found this theory of liability has no application when the plaintiff is suing the government in its capacity as his employer. Engquist, 128 S. Ct. at 2151.

survive under an equal protection approach." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 287 (3d Cir. 2004). In this case, the Court has found Plaintiff's claims fell very far short of the mark necessary to support a claim for a substantive due process violation, and the Court's finding is no different with respect to the claim of an equal protection violation. Defendants' motion for summary judgment on both Fourteenth Amendment claims will be granted.

### D.     Civil Conspiracy

Plaintiff has also included a general allegation that Defendants conspired against him unlawfully in the elimination of his employment position. As Defendants note, in order to allege and prove a cognizable claim of civil conspiracy, Plaintiff needed to allege and point to facts showing "a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999). Bare conclusions that defendants conspired together will not support a valid civil conspiracy claim. D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1377 (3d Cir. 1992).

As an initial matter, the Court finds that Plaintiff's generalized allegations regarding a conspiracy fall far short of the kinds of particularized claims that the Third Circuit has identified as necessary to support a conspiracy claim. See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) ("Only allegations of conspiracy which are particularized, such as those addressing the period of conspiracy, the object of the conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient . . . .").

Furthermore, even if Plaintiff had stated a potentially viable conspiracy claim, he has failed to identify any evidence in the record to support it. By his own admission, Plaintiff is

unaware of any of the Defendants meeting, discussing, or making plan to terminate Plaintiff's employment in retaliation for his exercise of his First Amendment rights. (DeWees Dep., p. 159.) Similarly, Plaintiff acknowledged that he was unaware of facts or evidence to support his contention that Warden DeRose played a part in the decision to eliminate Plaintiff's employment. (Id.) Beyond this absence of direct evidence of conspiracy, the Court disagrees that the various circumstances that Plaintiff has identified as circumstantial evidence provide adequate support for his conspiracy claim. For all of the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's conspiracy claim will be granted.

### E. Wrongful Discharge

Plaintiff's wrongful discharge claim is, in essence, a recasting of his First Amendment retaliation claims discussed above: he alleges that the termination of his employment was predicated on his exercise of First Amendment rights and therefore violated Pennsylvania public policy. For the reasons that follow, the Court finds that Defendants are entitled to summary judgment in their favor on this claim as well.

Ordinarily, Pennsylvania law does not provide for a common-law cause of action for the allegedly wrongful discharge of an at-will employee. Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 614 (3d Cir. 1992). Instead, in Pennsylvania an employer "may discharge an employee with or without cause, at pleasure, unless restrained by some contract." Id. (quoting Henry v. Pittsburgh & Lake Erie Railroad Co., 21 A. 157, 157 (Pa. 1891)). Although the Pennsylvania Supreme Court has recognized a narrow public policy exception to the at-will employment doctrine, it is very limited in scope. See Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918-19 (Pa. 1989) ("As a general rule, there is no common law cause of action against

an employer for termination of an at-will employment relationship. . . . Exceptions to this rule have been recognized only in the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.").

Both Pennsylvania courts and the United States Court of Appeals for the Third Circuit have been hesitant to apply the wrongful discharge doctrine broadly. See Clay, 559 A.2d at 918; Fraser v. Nationwide Mutual Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003) ("Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule.").  In light of a clear reluctance to recognize a cause of action for wrongful discharge for most claims, Plaintiff's casual assertion that his speech on matters of public concern and his petitioning activity are sufficient to state a claim is less than convincing. Indeed, Plaintiff cites to no law holding that these actions will support a cause of action for wrongful discharge under Pennsylvania law.  Plaintiff simply assumes that because he exercised First Amendment rights and his employment was later terminated, he enjoys a nearly automatic cause of action for wrongful discharge.  Yet when faced with similar claims in other contexts, Pennsylvania courts have been disinclined to find a cause of action based solely upon constitutional protections.  See, e.g., Martin v. Capital Cities Media, Inc., 511 A.2d 830, 844 (Pa. Super. Ct. 1980) (finding no cause of action for wrongful discharge where newspaper fired an employee for placing a classified advertisement in a competing newspaper, reasoning that "while the constitutional right of free speech is accorded a person who advertises, these rights are not meant to be, nor can they be, superimposed and extended to all other aspects of his life."); see also Veno v. Meredith, 515 A.2d 571 (Pa. Super. Ct. 1986) (following same reasoning to reject newspaper editor's wrongful discharge claim brought after he was fired for publishing an article

criticizing a judge).[11]

In this case, the Court will assume for purposes of this opinion that Plaintiff's exercise of his right of free speech could support a cause of action for wrongful discharge against a public employer under Pennsylvania law. The Court does so, in part, because Plaintiff's act of speaking out on what he perceived to be violations of a public contract between Dauphin County Prison and a third-party vendor arguably was required under the terms of his employment as a prison guard. Specifically, Section 1.3.7 of the Dauphin County Prison Handbook that governed Plaintiff's employment obligated him to "report, without reservation, any corrupt or unethical behavior which could affect an inmate or the integrity of the organization" and provided further that "[a]ny violations of rules or law must be reported at once to the proper authority." (Def.

---

[11]     Plaintiff justifies his claim for wrongful termination as follows:

> In this case, speaking out on matters of public concern are the social right of the plaintiff. In his position as Deputy Warden it could arguably [sic] within his social responsibility to report such behavior once he became informed of it. It is a clear mandate of public policy that an employee be free from discharge from his position for speaking out on matters of public concern. Additionally, it is the social right of the plaintiff to seek redress of his grievances by filing a lawsuit in federal court and he should not be discharged for exercising this right.

Plaintiff identifies no case law to support this sweeping statement. Notably, in the case that first recognized a cause of action for wrongful discharge, Geary v. U.S. Steel, 319 A.2d 174 (Pa. 1974), the Pennsylvania Supreme Court concluded that the plaintiff had not set forth a cognizable cause of action for wrongful termination despite the fact that he spoke out on a matter of public concern that his company's products were unreasonably dangerous to the public. The Pennsylvania Supreme Court concluded that, despite the "praiseworthiness of Geary's motives," 319 A.2d at 180, his claim for wrongful termination failed because he was not responsible for making judgments about product safety and because he bypassed his immediate supervisors in order to present his concerns to higher management, thereby undermining the company's legitimate interest in preserving its standard operational procedures. Id.

Statement of Material Facts, ¶ 7.)  Indeed, Defendants used this fact to argue, successfully, that

the Supreme Court's decision in Garcetti foreclosed Plaintiff's First Amendment retaliation

claims because they were predicated on speech that Plaintiff made in the course of his

employment.  However, regardless of whether Plaintiff's exercise of some First Amendment

rights that arguably were required by his employment could support a cause of action for

wrongful discharge under Pennsylvania law, Defendants are nevertheless entitled to summary

judgment on this claim for several reasons.

First, Plaintiff's claim against Dauphin County is barred by the Political Subdivision Tort

Claims Act, 42 Pa.C.S. §§ 8541 et seq.  The act provides that local government units such as

counties enjoy governmental immunity from suit.  Governmental immunity generally provides

that no local agency or an employee thereof "shall be liable for any damages on account of any

injury to a person or property caused by any act of the local agency or an employee thereof."  42

Pa.C.S. § 8541. Section 8542 of the act provides that a local governmental unit, such as the

County of Dauphin, may be liable for damages only where a plaintiff's damages are caused by a

negligent act of the local agency that falls within one of eight enumerated exceptions.  See 42

Pa.C.S. § 8542(b).  The Pennsylvania Supreme Court has instructed that the exceptions to

governmental immunity are to be strictly construed in consideration of the clear legislative intent

to limit government from tort liability.  Lindstrom v. City of Corry, 763 A.2d 394, 397 (Pa.

2000).  The complaining party bears the burden of establishing that the allegedly tortious conduct

comes within one of the eight statutory exceptions.  Mickle v. City of Philadelphia, 669 A.2d

520, 522-23 (Pa. Commw. Ct. 1996).

Pennsylvania courts have found that claims for wrongful discharge do not fall within any

exceptions to sovereign immunity from suit and therefore will not lie against a governmental entity. See McNichols v. Commonwealth of Pennsylvania, Dep't of Transp., 804 A.2d 1264, 1267 (Pa. Commw. Ct. 2002) (wrongful discharge does not come within any of the exceptions to sovereign immunity set forth in 42 Pa. C.S. § 8522).[12] Accordingly, the Court finds that Plaintiff's wrongful discharge claim against Dauphin County fails as a matter of law because the county enjoys governmental immunity from the claim.

To the extent Plaintiff purports to bring claims against Defendants Templeton and DeRose, the Court finds no evidence in the record suggesting that either individual had any involvement in the ultimate decision to eliminate Plaintiff's employment position; indeed, it is undisputed that neither of these defendants had authority to remove Plaintiff from his employment. As Defendants persuasively show, the evidence establishes that only the Salary Board for the County can eliminate employment positions such as the Deputy Warden position that Plaintiff held. There are, therefore, no facts that would support a claim for wrongful discharge against either Defendant Templeton or DeRose, even assuming Pennsylvania law would recognize a cause of action on the facts of this case.

The result is no different with respect to Defendant Haste, albeit for a different reason. It is undisputed that as a member of the Salary Board, Defendant Haste lacked the power on his

---

[12]     As noted, 42 Pa.C.S. § 8542 creates the statutory exceptions to governmental immunity; Section 8522 creates the statutory exceptions to sovereign immunity. The Pennsylvania Supreme Court has indicated that both immunity statutes, 42 Pa.C.S. §§ 8522 and 8542, are to be interpreted consistently. Crowell v. City of Philadelphia, 613 A.2d 1178, 1183 n.8 (Pa. 1992) (citing Snyder v. Harmon, 562 A.2d 307, 312 n.7 (1989)). Therefore, case law applicable to sovereign immunity would apply equally to governmental immunity to determine whether the exceptions apply. Walker v. Philadelphia Housing Authority, 631 A.2d 1117, 1118 n. 1 (Pa. Commw. Ct. 1993).

own to eliminate any employment position on his own. (Def. Statement of Material Facts, ¶ 106; Plaintiff's Counter-Statement of Material Facts, ¶ 106.)[13]  In an analogous context, the Commonwealth Court found that a township commissioner was entitled to judgment in his favor with respect to a wrongful discharge claim because, inter alia, the individual township commissioner had no authority to eliminate the employees' jobs without action by the entire body of township commissioners.  See Kuzel v. Krause, 658 A.2d 856, 860-61 (Pa. Commw. Ct. 1995) ("An individual Township Commissioner alone has no authority; he or she is just one member of the Board of Commissioners and has no power alone to take any action unless a majority of the Board of Commissioners, acting as a body, does so. . . . Even if [the commissioner] cannot act individually to discharge an employee and only the Board can do so, to hold him solely and individually liable for an action of the Board is impossible.").  The Court finds nothing in the record to suggest that the result should be different in this case.  Accordingly, summary judgment in favor of Defendant Haste will be entered on Plaintiff's claim of wrongful discharge.

For all of the foregoing reasons, the Court finds that Defendants motion for summary judgment on Plaintiff's claim of wrongful discharge under Pennsylvania law must be granted.

## V.    CONCLUSION

Following careful consideration of the parties' briefs in support of and opposition to

---

[13]    Plaintiff admits that Defendant Haste had no power to eliminate the Deputy Warden position on his own initiative.  Plaintiff believes that this fact actually supports his claim that Defendants conspired to eliminate the position.  As discussed above, the Court does not find evidence in the record to support Plaintiff's allegations regarding civil conspiracy and this finding is not altered by Plaintiff's suggestion regarding the significance of this particular undisputed fact.

Defendants' motion for summary judgment, and upon review of the record submitted by the parties, the Court finds that Defendants' motion for summary judgment must be granted with respect to all of Plaintiff's claims for the reasons explained above. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES DEWEES,** | **:** | |
| | **:** | |
| **Plaintiff** | **:** | **Civil Action No. 1:CV-05-212** |
| | **:** | |
| **v.** | **:** | **(Chief Judge Kane)** |
| | **:** | |
| **JEFFREY T. HASTE,** | **:** | |
| **MARK TEMPLETON,** | **:** | |
| **DOMINICK DEROSE, and** | **:** | |
| **DAUPHIN COUNTY,** | **:** | |
| | **:** | |
| **Defendants** | **:** | |

## <u>ORDER</u>

**AND NOW**, this 18th day of May, 2009, upon consideration of Defendants' collective

motion for summary judgment (Doc. No. 23), and for the reasons set forth more fully in the

within memorandum, **IT IS HEREBY ORDERED THAT** the motion is **GRANTED**.  The

Clerk of Court is directed to enter judgment in favor of Defendants and to close the case file.


<u>/s/ Yvette Kane</u>
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania